GARY L. TYSCH, ESQ. #128389
LAW OFFICES OF GARY L. TYSCH
16133 Ventura Boulevard, Suite 580
Encino, CA 91436-2411

(818) 995-9555 main
(818) 995-9550 facsimile

Attorneys for Plaintiff CREATIVE CARE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CREATIVE CARE, INC., | CASE NO.: 2:17-CV-4926 |
| Plaintiff, | COMPLAINT FOR: |
| v. | BREACH OF EMPLOYEE WELFARE BENEFIT PLAN (RECOVERY OF PLAN BENEFITS UNDER ERISA) 29 U.S.C. § 1132(a)(1)(b) |
| HEALTH NET OF CALIFORNIA, INC.; HEALTH NET LIFE INSURANCE COMPANY; HEALTH NET, INC.; CENTENE CORPORATION; and DOES 1 through 20, Inclusive, | |
| Defendants. | |

Plaintiff CREATIVE CARE, INC. (hereinafter referred to as "CCI")

complains and alleges:

**GENERAL AND INTRODUCTORY ALLEGATIONS**

1.     This Complaint states a controversy over which this Court has subject

matter jurisdiction. This Court's jurisdiction is invoked pursuant to 29 U.S.C. §

1337 and 29 U.S.C. § 1132(e).  Plaintiff's claims arise under the Employee

Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et seq* and

under the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA), 26

U.S.C. § 9812 et seq.

2.     Venue is properly laid within the Central District of California pursuant

1
**COMPLAINT**

to 28 U.S.C. §1391 because the acts complained of have substantially occurred within this district, because the Defendants reside in or may be found within this district, because any and all breaches occurred within this district and because the ends of justice so require.

3.     Plaintiff CCI is and, at all relevant times, was a corporation, organized and existing under the laws of the State of California, providing professional medical and mental health services, substance use disorder and rehabilitation services and treatments for patients suffering from substance addiction and mental health disorders.

4.     CCI provided and rendered medical services, substance use disorder and mental health treatments, diagnostic services, pharmaceuticals, medical supplies and other complimentary medical supplies, mental health, substance abuse and chemical dependence treatments and services to members, subscribers and insureds of defendants HEALTH NET OF CALIFORNIA, INC.; HEALTH NET LIFE INSURANCE COMPANY; HEALTH NET, INC.; CENTENE CORPORATION (hereinafter referred to collectively as "HEALTH NET") and DOES 1 through 20, inclusive.  Those members, subscribers and insureds of HEALTH NET were patients of CCI and are hereinafter referred to collectively as the "Patients."  As a result, CCI became entitled to reimbursement, remuneration and/or payment from HEALTH NET and DOES 1 through 20, inclusive for those services and supplies rendered to the Patients.

5.     Each of the Patients had express coverage for mental health services and for substance abuse, substance use disorder and chemical dependence treatments as a delineated benefit of their ERISA plans, summary plan descriptions, and policies which were underwritten and/or administered by HEALTH NET and DOES 1 through 20, inclusive. Each of the Patients was a plan participant and/or beneficiary of an Employee Welfare Benefit Plan ERISA plan, as those terms are defined by 29 U.S.C.§1002.   Each of the Patients was entitled to be reimbursed for

the cost of mental health services, substance abuse and chemical dependence treatments as a benefit of the subject HEALTH NET Plans, policies and insurance agreements governing the relationship between each Patient and HEALTH NET. Each of the subject HEALTH NET Plans provide coverage for both in and out-of-network mental health providers, and for admission to clinics for drug, substance use disorder and substance abuse treatment providers and related services received on an outpatient basis, inpatient basis, partial inpatient basis and/or intensive outpatient basis and include coverage for facility charges, psychotherapy and psychiatrists, and the charges for supplies and equipment, physician services, blood testing and other incidental services.  The subject Patients had PPO or POS benefits that allowed them to seek medically necessary benefits, whether in-network or not and were entitled to reimbursement for their claims because CCI was an out-of-network provider for HEALTH NET.  The subject Patients' claims should not have been denied or underpaid coverage, as HEALTH NET's plans provide coverage for the very services performed by CCI, including coverage and benefits for mental health and substance use disorder.

6.     Each of the Patients whose claims are at issue in this lawsuit had substance abuse problems and was suffering from serious medical problems and mental health disorders associated with their addictions.  All of these Patients chose Preferred Provider Organization ("PPO") insurance, rather than HMO insurance, through their employers so that they could receive their medical services in a timely and professional manner from the physicians and other medical providers of their choice, regardless of whether those physicians are in-network or out-of-network. HEALTH NET and DOES 1 through 20, inclusive, who administer and/or underwrite the PPO insurance for the Patient's employers, advertise, publicize and represent on their websites, in their literature and in commercials that the benefits of their PPO policies include the freedom to choose any doctor for any and all health care needs.

7.     CCI requested that HEALTH NET authorize the Patients to undergo treatment at CCI facilities for substance abuse.  HEALTH NET and DOES 1 through 20, inclusive, and each of them provided authorization to CCI to admit the Patients, to provide the Patients with services, supplies and to render mental health care and treatments to the Patients.  HEALTH NET and DOES 1 through 20, inclusive, and each of them, verified that each of the Patients was covered under a HEALTH NET Plan and that each of the Patients had mental health coverage which included coverage for substance abuse treatments, hospitalization and residential treatment.  HEALTH NET also expressly and/or impliedly represented, promised, agreed and covenanted that it would pay for the treatments, medical and mental health services to be rendered by CCI in advance of the time that CCI rendered services to the Patients.

8.     No provisions in those subject benefit plans, whether in their Summary Plan Descriptions (SPDs) and/or Evidence of Coverage documents (EOCs), justified the failure of HEALTH NET to pay fees for services charged by mental health care providers, or by substance abuse treatment centers, such as those managed and operated by CCI, and to instead pay nothing. It was arbitrary, capricious and improper for HEALTH NET to do so. In fact, during the insurance verification process for all of the Patients in this case, HEALTH NET represented to CCI that it would pay CCI's  fees. CCI sought information during this process about potential limitations on the reimbursement of CCI's fees each time prior to providing services, and specifically inquired each time prior to providing services as to how HEALTH NET's fee provisions would apply to each Patient. Alternatively, Defendants withheld information in response to such requests, and therefore misled plaintiffs into believing that services rendered by CCI would be paid.

9.     Likewise, no provisions anywhere in the subject Plans justified the failure to issue a final decision or denial on any of the Patient's claims.  No provisions anywhere in the subject Plans justified the failure and refusal of

HEALTH NET to issue an Explanation of Benefits Statement, delineating and explaining the justification or rationale for refusing to pay, cover and reimburse the Patient's claims or to adjust those claims.  These failures and refusals by HEALTH NET were therefore arbitrary, capricious, and a breach of HEALTH NET's fiduciary duties to plan participants. These failures and refusals were also violative of regulations promulgated under ERISA by the Department of Labor, which require that claims be adjudicated by the claims administrator (e.g., HEALTH NET) within 45 days after receipt of the claim and were also violative of the very Plans and Summary Plan Documents issued and adopted by HEALTH NET.

10.    For each Plan involved in this case, CCI is informed and believes and thereon alleges that the terms of the Plan: (1) provide coverage for each of the services, supplies and treatments rendered by CCI to each Patient and for which reimbursement, payment and coverage is sought; and (2) dictate that these covered services be paid according to a specific reimbursement rate or according to other formulae or allowable rates specified in the subject Plans.  Defendants have failed and refused to reimburse CCI for the covered services provided by CCI to the patients, according to the reimbursement rates expressly and specifically provided in the plans and have thereby breached the terms of the subject Plans.

11.    Each of the Patients have assigned all of their rights and remedies to payment and to assert their ERISA remedies under the subject Plans to CCI.  Each of the Patients have assigned all of their legal and equitable rights and remedies to recover the benefits owed to them by HEALTH NET to CCI, by and through an irrevocable assignment of all of their rights, title, and interest in and to their Claims against HEALTH NET.  These assignments conferred upon CCI the right to stand in the shoes of the Patients and to assert all of the rights and remedies held by the Patients as to HEALTH NET and/or as to the Plans administered by HEALTH NET, including, but not limited to, all rights, powers and equitable remedies of the Patients; the right of CCI to substitute in as a party or  plaintiff in any past, present,

or future litigation regarding the Patient's claims against HEALTH NET; the right to the proceeds of all legal fees and costs, if specifically awarded; and any interest, if specifically awarded; and, the right to make and effect collections, including the commencement of legal proceedings on behalf of the Patients.

12.     Defendant HEALTH NET, INC. is and was a Delaware corporation licensed to do business in and is and was doing business in the State of California, as an insurer.  Defendant HEALTH NET OF CALIFORNIA, INC. is and was a California Corporation licensed to do business in and is and was doing business in the State of California as an insurer.  Defendant Health Net Life Insurance Company is and was a California Corporation licensed to do business in and is and was doing business in the State of California as an insurer.  Defendant CENTENE CORPORATION is and was a Delaware Corporation licensed to do business in and is and was doing business in the State of California as an insurer.  CCI is informed and believes that the defendants, and each of them, are licensed by the Department of Insurance and/or the Department of Managed Health Care to transact the business of insurance in the State of California. HEALTH NET and DOES 1 through 20, inclusive are, in fact, transacting the business of insurance in the State of California and are thereby subject to the laws and regulations of the State of California.  At all relevant times, Defendants administered and/or insured certain health Plans which covered the Patients.  Each of those Plans expressly permitted subscribers and Patients to obtain healthcare services from medical and mental healthcare providers, such as CCI, which were "out-of-network" or which had not entered into pre-negotiated, written contracts with HEALTH NET setting their rates of pay.

13.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 10, inclusive, are unknown to CCI, who therefore sues said Defendants by such fictitious names.  CCI is informed and believes and thereon alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings referred to

herein and legally caused injury and damages proximately thereby to CCI.  CCI will seek leave of this Court to amend this Complaint to insert their true names and capacities in place and instead of the fictitious names when they become known to it.

14.   At all times herein mentioned, unless otherwise indicated, Defendants were the agents and/or employees of each of the remaining Defendants, and were at all times acting within the purpose and scope of said agency and employment, and each Defendant has ratified and approved the acts of his agent.  At all times herein mentioned, Defendants had actual or ostensible authority to act on each others' behalf in certifying or authorizing the provision of services; processing and administering the claims and appeals; pricing the claims; approving or denying the claims; directing each other as to whether and/or how to pay claims; issuing remittance advices and explanations of benefits statements; making payments to CCI and its Patients.

15.   In compliance with the terms each of the subject Plans, CCI and/or its Patients have exhausted any and all claims review, grievance, administrative appeals, and appeals requirements by submitting letters, appeals, grievances, requests for reconsideration and requests for payment to HEALTH NET.

16.   Alternatively, all review, appeal, administrative grievances, or complaint procedures are excused by law, are violative of CCI's due process rights, are or would be futile, or are otherwise unlawful, null, void, and unenforceable. HEALTH NET's pattern of behavior and their refusal to reimburse CCI render all potential administrative remedies futile. As a result of HEALTH NET's acts and/or omissions, and its violations of law, HEALTH NET is estopped from asserting that CCI has failed to exhaust its administrative remedies under ERISA.  Alternatively, by its failure and refusal to establish, maintain and follow a reasonable claim procedure process, CCI and/or its Patients have exhausted the administrative remedies available under the subject Plans and are entitled to pursue this action,

inasmuch as HEALTH NET and DOES 1 through 20, inclusive, have failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim, in violation of 29 C.F.R. § 2560.503-1(l).

## FACTS

17.    This complaint arises out of the failure of HEALTH NET to pay CCI for services rendered to six of CCI's Patients, who were, at all relevant times, enrollees, subscribers, members or insureds of HEALTH NET.  Alternatively, HEALTH NET has severely underpaid the claims of six of CCI's Patients.  In communications from HEALTH NET to CCI regarding each of these Patients, HEALTH NET has acknowledged and confirmed that each and every one of the Patient's claims is subject to and governed by ERISA, without exception.  In order to protect the Patients' identities and rights of privacy, the Patients are identified by pseudonyms.  The unpaid amounts owed to CCI by HEALTH NET for each of the Patients is identified in the following table:

| Patient's Initials | Health Net Ref. No. | Amount Owed to CCI |
|---|---|---|
| R. Ba. | R07538435FS1 | $205,100.00 |
| R. Bl. | R10541602 | $ 33,300.00 |
| A. C. | R10537656 | $ 47,452.00 |
| C. G. | R10743247 | $ 80,200.00 |
| J. M. | R09263761 | $122,750.00 |
| J. S. | R04265716 | $ 24,021.00 |
| | **Total Owed** | **$512,823.00** |

18.    Each of the Patients received mental health, substance abuse, substance use disorder and chemical dependence treatments, professional services, residential treatment, intensive outpatient treatments, pharmaceuticals, laboratory services and other incidental services at CCI's facilities.   Payments are now due and owing by HEALTH NET and DOES 1 through 20, inclusive, to CCI for the care, treatment

and procedures provided to these Patients of CCI, all of whom were insureds, members, policyholders, certificate-holders or were otherwise covered for health, hospitalization, pharmaceutical expenses, diagnostics, mental health, facility charges and major medical insurance through policies or certificates of insurance issued, underwritten and/or administered by Defendant HEALTH NET and DOES 1 through 10, inclusive.

19.    CCI is informed and believes that each of the Patients for whom claims are at issue was an insured of HEALTH NET either as a subscriber to coverage or a dependent of a subscriber to coverage under a policy or certificate of insurance issued, administered and/or underwritten by HEALTH NET and DOES 1 through 20, inclusive, and each of them.  CCI is informed and believes that each of the Patients for whom claims are at issue was covered by a valid insurance agreement with HEALTH NET for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care, procedures and surgeries by out-of network medical practitioners like CCI and ensuring that HEALTH NET would pay for the health care expenses incurred by the Patients for services rendered by CCI.  Each of the Patients also had express coverage and benefits for mental health care services under his/her applicable plan through HEALTH NET.

20.    Alternatively, CCI is informed and believes that some of the Patients for whom claims are at issue were covered by self-funded Plans which were administered by HEALTH NET.  Those self-funded Plans provided coverage to the Patients either as a subscriber to coverage or as a dependent of a subscriber to coverage under a certificate of coverage administered by HEALTH NET and DOES 1 through 20, inclusive, and each of them.  For each of these self-funded plans, CCI is informed and believes and thereon alleges that HEALTH NET was a claim fiduciary, Plan fiduciary and administrator charged with making claim determinations on behalf of the Plan and was subject to ERISA and the regulations promulgated by the Department of Labor.

21.     CCI is informed and believes that each of the Patients for whom claims are at issue was covered by a valid employee benefit Plan, providing coverage for medical and mental health expenses, for the specific purpose of ensuring that the Patients would have access to medically necessary treatments, care and procedures by out-of-network medical practitioners like CCI and ensuring that HEALTH NET would pay for the health care expenses incurred by the Patients for services rendered by CCI.

22.     At all relevant times, each of the Patients received medical and/or paramedical services, procedures, mental health care, substance abuse treatment, chemical dependence treatments or other healthcare services from physicians or paramedical personnel associated with CCI at facilities owned and operated by CCI. CCI and its employees who rendered treatments or performed procedures upon the Patients were "out-of-network providers" or "non-participating providers" who had no preferred provider contracts or other written contracts with HEALTH NET at the time that the treatments or procedures were performed. CCI had no written contracts with HEALTH NET by which the amount that it would be paid was pre-established, defined or identified at the time that the services or procedures were performed.

23.     At all relevant times, each of the Patients received medical and/or paramedical services, procedures, mental health care, substance abuse treatment, chemical dependence treatments or other healthcare services from physicians, psychologists, paramedical and/or parapsychological personnel associated with CCI at facilities owned and operated by CCI. Upon the rendition of services to each of the Patients, each of the Patients became legally indebted, responsible and liable to CCI for the full cost of and for payment of those services. Prior to the rendition of services by CCI, CCI sought and obtained a guarantee from the Patients that they would be legally responsible, liable and indebted for the full cost of and for payment of those services to be rendered by CCI. However, CCI agreed and advised the

10
**COMPLAINT**

Patients that it would defer seeking, collecting and recovering any balances owed by the Patients until after CCI had first billed and recovered payments from the Patients' health coverage Plans and after the Patients' co-insurance responsibility or out-of-pocket responsibility had been determined and calculated by HEALTH NET. As a result of the non-payment of benefits by HEALTH NET and DOES 1 through 20, inclusive, each of the Patients remains liable, indebted and legally responsible for the services rendered by CCI to the Patients. At no times has CCI ever waived, excused or otherwise declined to enforce it rights against the Patients to recover payment from those Patients, nor has CCI ever communicated any waivers of the Patients' legal responsibility, liability or indebtedness for the cost of services rendered to the Patients. Similarly, CCI has never communicated or represented that it would accept any discounted payment or remuneration from Patients for the cost of their medical treatments.

24.  CCI and its employees who rendered treatments or performed procedures upon the Patients were "out-of-network providers" or "non-participating providers" who had no preferred provider contracts or other written contracts with HEALTH NET at the time that the treatments or procedures were performed. CCI had no written contracts with HEALTH NET by which the amount that it would be paid was pre-established, defined or identified at any time prior to the date that the services or procedures were performed. As such, HEALTH NET was required to pay CCI in an amount and at rates which were set, calculated and determined solely by HEALTH NET, in accordance with the terms of the subject and applicable Plans. Typically, the rates paid to out-of-network providers was a percentage of their billed charges or a rate which was comparable to the rate paid to other similar medical providers in the same geographical area, as determined by HEALTH NET and DOES 1 through 20, inclusive. Because each of the Patients' health benefit Plans was different and used different methodologies, rates and rubrics to calculate the amount owed by HEALTH NET, neither the Patients nor CCI was aware of the

actual or exact amount that would be paid by HEALTH NET in advance of HEALTH NET's adjustment and examination of the claims and calculation of benefits. Typically the amounts payable by HEALTH NET and the patient's responsibility amounts were communicated by and through the issuance of Explanation of Benefit Statements and/or Explanation of Payment Statements by HEALTH NET, only after the claims had been adjusted and processed by HEALTH NET.

25. At all relevant times, therefore, HEALTH NET and DOES 1 through 20, inclusive, were aware and knew that until they processed and issued Explanation of Benefit Statements or Explanation of Payment Statements to the members, Patients and CCI, neither CCI nor the Patients could determine the allowable amount due or any balance due from the Patients. As such, it was impossible for CCI to collect coinsurance amounts or the Patients' out-of-pocket costs up front in advance of the rendition of services.

26. Each of the Patients requested CCI to render and provide medical treatment and professional services, knowing that CCI was an out-of-network, non-participating provider, who was not contracted with HEALTH NET. Each of the Patients sought out, requested and requisitioned treatment and professional services from CCI and selected and chose CCI to provide him or her with professional services, treatments, medical and mental health care, based upon CCI's reputation in the community, experience, and availability to render immediate care. Each of the Patients signed admissions agreements in which the Patients agreed to be obligated, legally responsible and liable for the full amount of the charges incurred for services rendered at CCI.

27. Each of the Patients presented his or her insurance card to CCI, which card identified the Patient as an insured, subscriber and/or member of HEALTH NET. These identification cards, which were issued by HEALTH NET, did not identify whether the coverage was underwritten by HEALTH NET as an insurer or

1  whether HEALTH NET was acting as a third party administrator on behalf of a self-

2  funded Plan.  Prior to the rendition of those professional services, treatments,

3  admissions and the provision of care, CCI contacted HEALTH NET with regard to

4  each of the Patients, at the telephone numbers identified on those same cards.

5  During each one of those phone conversations, CCI identified the type of treatment

6  that would be provided to the particular Patient to HEALTH NET and verified that

7  each of the Patients was covered for such professional services and treatments,

8  using the names and identification numbers listed on the insurance cards of the

9  Patients.  During each one of those phone conversations, HEALTH NET

10  affirmatively confirmed, represented, and verified that each of the Patients whose

11  claims are involved in this action was an insured of or member of HEALTH NET;

12  that each of the Patients whose claims are involved in this action had coverage for

13  mental health and addiction benefits, including inpatient (residential treatment)

14  benefits, partial hospitalization benefits, intensive outpatient benefits, and outpatient

15  benefits, among other benefits, through their policies or plans; that each of the

16  policies, plans and insurance contracts covering each of the Patients provided

17  coverage for mental health and addiction benefits and would pay for the services

18  sought to be rendered by CCI; that there were no exclusions, conditions or

19  limitations which would result in claims submitted on behalf of each Patient being

20  denied, rejected, refused, or unpaid.

21      28.    At all relevant times prior to the provision and rendition of services to

22  each of the Patients, CCI contacted HEALTH NET and DOES 1 through 10,

23  inclusive, and each of them, by phone to obtain prior authorization, pre-certification

24  and consent from HEALTH NET to render treatment, admit the Patients to its

25  facilities and to provide mental health care, substance abuse treatment and chemical

26  dependency treatments upon each Patient.  At all relevant times prior to the

27  provision and rendition of services to each of the Patients, CCI informed HEALTH

28  NET of its intent to render services to the Patients and offered that it would provide

**COMPLAINT**

certain specified services, procedures, treatments and supplies to the Patients in
consideration of the payment for those services, procedures, treatments and supplies
by HEALTH NET.  HEALTH NET accepted that offer and agreed to pay,
reimburse, compensate, remunerate, and indemnify CCI directly for the specified
services, treatments and supplies to be provided and rendered to each of the
Patients. As a result of HEALTH NET's offer to pay for the services to be rendered
by CCI, CCI was induced to and did provide and render professional services and
treatments to the Patients at great costs to itself, fully expecting that it would be paid
for its services, after submission of its claims to HEALTH NET.  This expectation
was further buttressed by the longstanding interactions, and business practices and
customs that had been established between CCI and HEALTH NET over numerous
years, which had resulted in HEALTH NET's processing and payments of hundreds
of prior claims on behalf of patients who had received care and treatment at CCI.
On all prior occasions, CCI's claims for its patients had been paid at 75% of its
billed charges (less copayments, co-insurance amounts and deductibles).

29.    During each of these phone conversations, HEALTH NET advised and
represented that it would adjust all claims submitted by CCI and would pay those
claims according to its allowed rate, specified in the subject Plan for each patient
(which historically had invariably been paid at a rate of 75% of billed charges).
However, HEALTH NET never advised CCI whether a Patient's claim was insured
or underwritten by HEALTH NET or whether HEALTH NET was acting in the
capacity of an administrator only in adjusting that claim on behalf of a self-funded
plan.  To date, throughout the course of all of the interactions between HEALTH
NET and CCI relating to the subject claims, HEALTH NET has never identified
whether or which of the subject claims is insured, underwritten or only administered
by HEALTH NET.  HEALTH NET has never indicated the name of any self-funded
Plans or identified those Plans as responsible for payment of the claims for any
Patient.  For each of the subject claims, HEALTH NET identified that it was in fact

the claims administrator and that it was acting as a fiduciary for the subject Plan. Plaintiff will seek leave to identify any and all self-funded Plans and to join those Plans when and if HEALTH NET identifies any of the subject Plans as self-funded and identifies the proper name of that entity.

30.   At all relevant times, CCI was advised by representatives and agents of HEALTH NET and DOES 1 through 10, inclusive, and each of them, that each of the Patients was insured, covered and eligible for coverage under their respective Plans or Policies for the services to be rendered by CCI, at facilities operated by CCI; that CCI was authorized to render services, treatment and care; and that CCI would be paid by HEALTH NET for performance of the services, care and/or treatments rendered by CCI, upon CCI's submission of claim forms and invoices to HEALTH NET.

31.   At no time prior to the provision of services to each of the Patients by CCI, during conversations between CCI and HEALTH NET, did HEALTH NET advise CCI that each of the Patients' policies or certificates of insurance was subject to certain exclusions, limitations or qualifications, which might result in denial of coverage for the procedures and treatments to be rendered to each of the Patients; nor was CCI offered copies of the applicable policies or certificates of insurance coverage, or evidence of coverage documents applicable to each of the Patients by HEALTH NET; nor was CCI otherwise or in any way made privy to the terms, conditions, limitations, exclusions and qualifications of those policies or certificates.  Although CCI identified each of the Patients by name and membership number and identified the type of treatment proposed for the Patients, CCI was never informed by HEALTH NET of the specific amount that CCI would be paid; it was only told that CCI would be paid, reimbursed, remunerated, indemnified and/or compensated for the services which it rendered to the Patients at the allowable rate paid by HEALTH NET (which allowable rate had historically and invariably been the equivalent of 75% of the billed rates of CCI).

32.     Up until approximately January 2016, when CCI (as an out-of-network provider) had provided mental health services to patients who were insured or member of a HEALTH NET plan, it was reimbursed by HEALTH NET at a rate of 75% of CCI's billed charges, less applicable copayments, deductibles and coinsurance amounts.  However, after January 2016, without explanation, forewarning, or justification, HEALTH NET unilaterally changed the manner in which it calculated the allowable amount payable for mental health claims submitted by out of network providers, including CCI.  In a letter issued to CCI by HEALTH NET on August 8, 2016, HEALTH NET explained its new approach to calculating the amounts owed to CCI for mental health benefits after January 2016. In that letter HEALTH NET admitted that it was differentiating and discriminating between mental health and/or substance use and disorder benefits on the one hand and medical benefits on the other hand HEALTH NET admitted that it was applying different and more restrictive financial requirements to mental health and substance use disorder benefits than it applied to medical and surgical benefits which it covered under the same plan.  It explained the manner in which it was now paying claims for mental health and substance use disorder benefits, stating:

> May we explain that Toxicology/laboratory,
> outpatient facility and residential treatment center claims
> from out-of-network substance abuse providers received
> prior to January 1, 2016 were processed and adjudicated as
> "all other services" under the "Maximum Allowable
> Amount" ("MAA") definition in Health Net's PPO Policy,
> and therefore reimbursed at 75% of the providers billed
> charges.  These claims should have been and are now
> being adjudicated and processed using the Medicare
> methodology set forth herein.
> Page 17 of the insured's Health Net Policy states the

following:

> "MAXIMUM ALLOWABLE
> AMOUNT is the amount on which HNL
> bases its reimbursement for Covered Services
> and Supplies received from a Hospital,
> Skilled Nursing Facility, Home Health Care
> Agency for Outpatient surgery or for
> Emergency Care received during Foreign
> Travel or Work Assignment, provided by an
> Out-of-Network Provider, which may be less
> than the amount billed for services and
> supplies.  HNL calculates Maximum
> Allowable amount as the lesser of the amount
> billed by the Out-of-Network Provider or the
> amount determined as set forth herein.
> Maximum Allowable Amount is not the
> amount that HNL pays for a Covered
> Services; the actual payment will be reduced
> by applicable Coinsurance, Copayments,
> Deductible and other applicable amounts set
> forth in this Policy.
>
> For all other types of services,
> Maximum Allowable Amount is determined
> by applying a percentage of what Medicare
> would allow (known as the Medicare
> allowable amount).  The Maximum
> Allowable Amount for such services is 190%
> of the Medicare allowable amount."

33.     At all relevant times prior to the rendition of treatment on the Patients, CCI was led to believe that it would be 75% of its billed rates (less applicable deductibles and coinsurance amounts) for the mental health and substance use disorder treatments it rendered to the Patients. In reliance upon the representations of HEALTH NET that HEALTH NET would pay for the services to be rendered to each Patient at 75% of billed rates, CCI was induced to and did provide and render medical treatments and professional services to each of the Patients.  Had HEALTH NET advised CCI that it would pay a reduced Medicare rate for the same services, CCI would never have rendered services to the Patients or would have required each patient to self-pay for his or her treatments.

34.     The manner in which the Maximum Allowable Amount has been calculated for the claims of each of the Patients and the manner in which CCI has been paid is violative of the Mental Health Parity and Addiction Equity Act of 2008, 26 U.S.C.A. Section 9812, since the financial requirements, copayments, coinsurance and out-of-pocket expenses of the Patients are substantially more restrictive, limited, parsimonious and penurious for mental health and substance use disorder benefits than they are for medical and surgical benefits which are both covered in the same Plan or policy, in violation of 26 U.S.C. Section 9812(a)(3). Moreover, the subject Plans or policies discriminate between out-of-network and in-network providers in a similar manner providing substantially more restrictive, limited, parsimonious and penurious coverage for mental health and substance use disorder benefits performed by out-of-network providers than they provide for medical and surgical benefits provided to in-network providers in violation of 26 U.S.C. Section 9812(a)(5).  As such the acts and omissions of Defendants, and each of them are unlawful and are violative of ERISA and of the Mental Health Parity and Addiction Equity Act of 2008.

35.     CCI is a beneficiary (as that term is defined by 29 U.S.C. § 1002(8)) of the benefits payable under the subject Plans and insurance policies issued to and

covering the Patients, by virtue of the assignment of rights given by each of the
Patients to CCI.  At all relevant times, CCI was authorized by law to act on behalf
of the Patients with respect to filing claims with HEALTH NET, demanding
production of documents from HEALTH NET, filing appeals on behalf of the
Patients with HEALTH NET and otherwise pursuing actions on behalf of the
Patients with respect to the Patients' Plans, in accordance with 29 C.F.R. 2560.503-
1(b)(4).

36.     During those same conversations, CCI was expressly advised by
HEALTH NET's representatives that it would be paid directly (instead of HEALTH
NET paying each of the Patients themselves), upon the submission of claims to
HEALTH NET, as soon as the claims were adjusted, processed and reviewed by
HEALTH NET.   During those same conversations, CCI was expressly advised,
informed, instructed and told by HEALTH NET's representatives and agents that
CCI should submit its claims to HEALTH NET for the services to be rendered, prior
to billing each of the Patients (instead of requiring each of the Patients to submit
claims to HEALTH NET themselves) and that CCI was not to seek to collect any
coinsurance amounts from the Patients, before the claims for services to be rendered
were submitted, adjusted, processed and paid by HEALTH NET.  In return for this
concession by CCI and CCI's promises, covenants and agreement not to seek
payment from the Patients, HEALTH NET promised to pay CCI directly, the
amount that it owed to CCI for the services to be rendered (and agreed to accept an
Assignment of Benefits through which each of the Patients assigned that Patient's
HEALTH NET insurance benefits to CCI directly).  In accordance with the
instructions offered by representatives of HEALTH NET, once HEALTH NET paid
CCI, CCI was free to balance bill or charge the Patients and to collect any
outstanding amounts (the difference between HEALTH NET's payment amount and
the total of the billed charges) from the Patients.  As such, HEALTH NET
guaranteed that it would first pay its portion of the charges for the services to be

rendered to CCI, before the Patients had an obligation to pay the balance of the bill.

37.    At all relevant times, during the conversations between CCI and HEALTH NET, CCI was advised by representatives of HEALTH NET that HEALTH NET consented to the provision of treatments, services and/or supplies to be rendered by CCI to each and every one of the Patients; that CCI would be paid certain unspecified and undefined amounts for the services, treatments and/or supplies to be rendered to each of the Patients, after CCI had submitted claims for those services, treatments and/or supplies and after HEALTH NET had adjudicated, adjusted, and or examined the claims; and that the specific amount of payment to be paid to CCI would be determined by HEALTH NET.  Prior to the rendition of services by CCI, during the conversations between CCI and HEALTH NET, HEALTH NET requested that CCI proceed to provide services to each of the Patients, authorized CCI to render services to each and every Patient, assented to an agreement that CCI render services to each and every Patient, certified that each and every Patient was an insured, member, subscriber or a covered member of HEALTH NET and that each and every Patient had existing coverage for the services to be rendered by CCI which would provide payment for the services to be rendered to each of the Patients by CCI.

38.    CCI is not privy to, nor does it possess or have access to any of the Evidence of Coverage documents, Summary Plan Descriptions, Plan Documents, policies or Certificates of Insurance which are issued to the Patients.  As such, CCI does not have knowledge of or access to the definition of an "allowable amount" or "allowable benefit" as that term is defined or used by HEALTH NET, at any time prior to the date that HEALTH NET processes, adjusts and pays each claim.  These definitions were not imparted by HEALTH NET to CCI during the insurance verification or authorization process, either, nor was CCI referred to any source or reference that would define, quantify or specify an "allowable amount" for the proposed services or treatments or a methodology for determining the rates to be

paid by HEALTH NET.

39.    At all relevant times, CCI provided medically necessary and appropriate medical care and treatment to Patients holding valid insurance policies and certificates issued and/or administered by HEALTH NET.

40.    At all relevant times, HEALTH NET has improperly failed and refused to pay or has underpaid CCI for medically necessary and appropriate services rendered to HEALTH NET's insureds, subscribers and members for those treatments, services and/or supplies rendered by CCI.  For each of the Patient claims at issue in this action, CCI provided medical services to members and insureds of HEALTH NET.

41.    Following the rendition of treatment by CCI to its Patients, invoices, bills and claims were submitted to HEALTH NET and DOES 1 through 10, inclusive, and each of them, for adjustment and payment.  In compliance with the request of HEALTH NET and DOES 1 through 10, inclusive, and each of them, medical records pertaining to each of the Patients' treatments were provided to HEALTH NET and DOES 1 through 10, inclusive, by CCI.  All requested information was supplied to HEALTH NET by CCI.

42.    For each of the claims at issue in this case, HEALTH NET failed and refused to adjust the claims and to issue Explanation of Benefits Statements to CCI in a timely manner as required by Federal Regulations. These failures constituted an effective denial of benefits, although an actual denial of benefits had not been communicated by HEALTH NET.  By virtue of its failure and refusal to issue Explanation of Benefit Statements and to adjust the claims, CCI was precluded from and inhibited from appealing the effective denial of payment of the subject claims.

43.    For each of the claims at issue in this case, HEALTH NET has failed and refused to complete the claim examination process, has delayed issuing Explanation of Benefit and Explanation of Payment statements to CCI, has requested unnecessary and irrelevant information and documentation from CCI

which has no bearing on the claim examination process, has failed and refused to provide notification of the reasons for its failure and refusal to pay benefits and has failed to engage in a meaningful appeal process with CCI.   For each of the claims at issue in this case, ultimately HEALTH NET has failed and refused to pay benefits in any amount whatsoever, leaving the entire charges unpaid and owed.

44.     For each of the claims at issue in this case, the "Explanation of Benefits Statements" when they were ultimately issued and published by HEALTH NET did not explain how the claims were adjusted, disallowed or denied.  For each of the claims at issue in this case, the "Explanation of Benefits Statements" provided a vague, ambiguous and uncertain explanation for the manner by which HEALTH NET based its claim determination, making it impossible for CCI or the Patients to intelligently challenge the denials on appeal.  Defendant's Explanation of Benefit statements were uninformative, false, and misleading, thereby depriving CCI and the Patients from an ability to intelligently engage in the appeal process or understand the basis and rationale for HEALTH NET's denials of benefits.

45.     At no time prior to rendering services to the Patients has HEALTH NET ever advised, explained, informed or otherwise described to CCI how HEALTH NET determined to deny/underpay the claims and/or disallow the claims, nor did it advise CCI that it would apply a definition of Maximum Allowable Amount that was different than the definition it had applied to similar mental health and substance use disorder claims in the past.  CCI is informed and believes and thereon alleges that each of the subject Patient's claims was adjusted, considered, examined and processed, simultaneously, uniformly and conjunctively as one large claim, without distinction or discrimination by HEALTH NET.  For each of the involved Patients, each of their claims for services rendered by CCI were uniformly denied or underpaid on the same basis and with the same explanation. Each claim was denied or underpaid by HEALTH NET in its Explanation of Benefits Statements on the terse and uninformative grounds that:

**COMPLAINT**

1
2
           Charge exceeds the allowed amount under the member's

           plan for services rendered by this non-contracted provider.

3   This statement shed no light on the basis for the denial or underpayment.  This

4   statement referred to information in HEALTH NET's file or Plan documents which

5   was not accessible to or available to CCI and which provided no basis for CCI to

6   appeal or otherwise challenge the denial.  Despite the fact that each Patient received

7   unique services and had unique circumstances surrounding their treatments, each

8   and every Explanation of Benefit Statement was denied and/or underpaid for the

9   exact same reason.  The same explanation quoted above, verbatim, was given for

10   HEALTH NET's denial of each Patient's claims.  None of the Explanation of

11   Benefit Statements, indicated the language or clause of the subject Plan which had

12   been relied upon to deny benefits, nor was any reference made to the subject Plan in

13   denying benefits.

14        46.    In each one of the Explanation of Benefit Statements issued by

15   HEALTH NET in which a denial was communicated, HEALTH NET failed to

16   advise CCI of the right of the Patient or CCI to appeal the adverse claim

17   determination made by HEALTH NET, in violation of Federal law and regulations.

18   No statements were made by HEALTH NET in any of these Explanation of Benefit

19   Statements, concerning the right to appeal, file a grievance, seek reconsideration or

20   otherwise engage in an administrative review process, as required by Federal law

21   and regulations.

22        47.    HEALTH NET and DOES 1 through 10, inclusive, and each of them,

23   have failed and refused to pay or have underpaid benefits for the services rendered

24   by CCI to the Patients in violation of the terms of the subject Plans, policies,

25   Explanation of Coverage documents and other benefit plans, Summary Plan

26   Descriptions and insurance agreements.

27   / / /

28   / / /

**FIRST COUNT:**

**FOR BREACH OF PLANS RELATING TO**

**COVERAGE, PURSUANT TO 29 U.S.C.**

**SECTION 29 U.S.C. CODE SECTION 1132(a)(1)(B)**

**[AS AGAINST ALL DEFENDANTS]**

48.     The allegations of all previous paragraphs are incorporated herein by reference as if set forth in full.

49.     Defendants delivered to CCI's Patients various health insurance policies or other certificates of insurance, health plans, evidence of coverage documents, Summary Plan Descriptions and/or Plan Documents, in which they promised to provide coverage and benefits for mental health services, substance abuse, substance use disorder and/or chemical dependency treatments.

50.     Under the terms of those policies, certificates of insurance, evidence of coverage documents, Plan documents and Summary Plan Descriptions, Defendants agreed to provide CCI's Patients with coverage, benefits and reimbursement for mental health care treatments and/or substance abuse and chemical dependency treatments.   Under the terms of those policies, certificates of insurance, evidence of coverage documents, Plan documents and Summary Plan Descriptions, Defendants agreed to provide the CCI's Patients with coverage, benefits and reimbursement for those mental health care treatments and/or substance abuse and chemical dependency treatments rendered by CCI, without exception, exclusion, qualification or limitation.

51.     At all relevant times, CCI was a beneficiary and/or third party beneficiary of the subject policies, plans and contracts by which its Patients were insured or covered by Defendants, based upon the assignment of rights issued by each Patient to CCI.  Alternatively, at all relevant times, CCI was assigned the rights and remedies of its Patients to pursue claims and enforce the rights of the Patients under those plans and contracts by which its Patients were insured or covered by

Defendants.  Beginning in or about 2016, each and every one of the Patients received mental health, substance abuse and chemical dependency services from CCI.  Shortly after those services were rendered, CCI submitted claims on behalf of the Patients to Defendants for adjustment, payment, reimbursement and coverage. For each of these claims and for each of the involved Patients, Defendants have failed and refused to pay, process or adjust these claims in an appropriate fashion by, among other acts and omissions:

(A)    Delaying the processing, adjustment and/or payment of claims for periods of time, greater than 45 days after submission of the claims, in violation of 29 C.F.R. § 2560.503-1(f)(2)(iii)(B);

(B)    Failing and refusing to provide any notice and/or explanation for the denial of benefits, payments or reimbursement of the claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

(C)    Failing and refusing to provide an adequate notice and/or explanation for the denial of benefits, payments or reimbursement of claims of each of the Patients, in violation of 29 U.S.C. § 1133(1);

(D)    Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, and by failing and refusing to set forth the specific reasons for such denials, all in violation of 29 U.S.C. § 1133(1);

(E)    Failing and refusing to provide an explanation for the denial of benefits, payments or reimbursements of claims of each of the Patients, written in a manner calculated to be understood by the participant, in violation of 29 U.S.C. § 1133(1);

(F)    Failing to afford CCI and/or its Patients with a reasonable opportunity to engage in an appeal process, in violation of 29 U.S.C. § 1133(2);

(G)    Failing to afford CCI and/or its Patients with a reasonable opportunity to engage in an appeal process which was full and fair, in violation of

29 U.S.C. § 1133(2);

(H)  Requiring CCI and/or its Patients to file more than two appeals of an adverse benefit determination prior to bringing a civil action, in violation of 29 C.F.R. 2560.502-1(c)(2);

(I)  Failing and refusing to provide CCI and/or its Patients with information pertaining to their rights to appeal, including, but not limited to those deadlines for filing appeals and/or the requirements that an appeal be filed, in violation of 29 U.S.C. § 1133(1);

(J)  Violating the minimum requirements for employee benefit plans pertaining to claims and benefits by participants and beneficiaries, in violation of 29 C.F.R. § 2560.503-1(a), et seq.;

(K)  Failing and refusing to establish and maintain reasonable claims procedures, in violation of 29 C.F.R. § 2560.503-1(b), et seq.;

(L)  Establishing, maintaining and enforcing claims procedures which unduly inhibit the initiation and processing of claims for benefits, in violation of 29 C.F.R. § 2560.503-1(b)(3);

(M)  Requiring that the Patients pay a fee or cost as a condition to making a claim or appealing an adverse claim or benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(3);

(N)  Precluding and prohibiting CCI from acting as an authorized representative of the Patients in pursuing a benefit claim or appeal of an adverse benefit determination, in violation of 29 C.F.R. § 2560.503-1(b)(4);

(O)  Failing and refusing to design, administer and enforce their processes, procedures and claims administration systems to ensure that benefit claim determinations are made in accordance with the governing Plan documents, in violation of 29 C.F.R. § 2560.503-1(b)(5);

(P)  Failing and refusing to design, administer and enforce their processes,

procedures and claims administration to ensure that their governing Plan documents and Plan provisions have been applied consistently with respect to similarly situated participants, beneficiaries and claimants, in violation of 29 C.F.R. § 2560.503-1(b)(5);

(Q)  Failing and refusing to provide CCI and/or its Patients with reasonable access to and/or copies of documents, records and other information relevant to the denial of benefits, in violation of 29 U.S.C. §§ 1021, 1022 and 1132(c) and 29 C.F.R. § 2560.503-1(b)(3), thereby justifying the imposition of penalties under 29 U.S.C. § 1132(c);

(R)  Failing and refusing to pay benefits for services rendered by CCI which HEALTH NET had authorized, in violation of California Health & Safety Code § 1371.8 and California Insurance Code §796.04; and

(S)  Rescinding each and every authorization given to CCI in which CCI's Patients' care, treatment and services were pre-approved, authorized and certified by HEALTH NET, in violation of California Health & Safety Code § 1371.8 and California Insurance Code §796.04.

(T)  Failing to provide benefits for mental health and substance use disorder benefits on par with medical and surgical benefits, in violation of 26 U.S.C. Section 9812(a)(3);

(U)  Failing to provide coverage and/or benefits for mental health and substance use disorder services on par with medical and surgical benefits provided and paid to in-network providers, in violation of 26 U.S.C. Section 9812(a)(5);

52.  The failure and refusal of Defendants to provide appropriate coverage, reimbursement, payment, and/or benefits for the substance abuse, substance use disorder, chemical dependency and/or mental health benefits rendered by CCI to CCI's Patients who were covered by Defendants and Defendants' denials and under payments of health insurance benefits and coverage constitutes a breach of the

insurance plans and/or employee benefit Plans between Defendants and CCI's Patients. CCI seeks reimbursement and compensation for any and all payments which it would have received and to which it will be entitled as a result of Defendants' failures to pay appropriate benefits and cover those services rendered by CCI to the Patients, in an amount presently unknown but to be set forth at the time of trial.

53.    Defendants have arbitrarily and capriciously breached the obligations set forth in the Plan issued by Defendants, and each of them.  Defendants, and each of them, have arbitrarily and capriciously breached their obligations under the ERISA Plan to provide CCI and the Patients with health benefits.

54.    As a direct and proximate result of the aforementioned conduct of Defendants in failing to provide CCI and the Patients with health benefits, CCI has been damaged in an amount equal to the amount of benefits CCI should have received and to which the Patients would have been entitled had Defendants paid the payments as required under the subject Plans.

55.    As a direct and proximate result of the aforesaid conduct of Defendants in failing to provide disability coverage as required, CCI has suffered, and will continue to suffer in the future, damages under the policy, plus interest and other economic and consequential damages, for a total amount to be determined at the time of trial.

56.    29 U.S.C. § 1132(g)(1) authorizes this court to award reasonable attorneys' fees and costs of action to CCI.  As a result of the actions and failings of the Defendants, and each of them, CCI has retained the services of legal counsel and has necessarily incurred attorneys' fees and costs in prosecuting this action. Further, CCI anticipates incurring additional attorneys' fees and costs in hereafter pursuing this action, all in a final amount which is currently unknown.  CCI therefore requests an award of reasonable attorneys' fees and costs.

/ / /

## **PRAYER FOR RELIEF**

WHEREFORE, CCI prays for judgment as follows:

## **ON THE FIRST COUNT:**

1.  For benefits payable by HEALTH NET under the subject employee benefit plans to reimburse CCI for those services rendered to the Patients by CCI;

2.  For reasonable attorneys' fees and costs;

3.  For prejudgment interest at a rate of 10% per annum as mandated by California Insurance and Health & Safety Codes; and

3.  For such other relief as the court deems appropriate.

Dated: July 5, 2017                     LAW OFFICES OF GARY L. TYSCH


By:_____/S/_____
                GARY L. TYSCH
                Attorneys for Plaintiff, CREATIVE
                CARE, INC.

**COMPLAINT**